## CALLANAN v. SMART.

1. **Contract**: COLLATERAL SECURITY: PAYMENT OF DEBT DISCHARGES SECURITY. Plaintiff and defendant had advanced money for the D. & M. R. Co., relying for payment upon certain taxes due the company. Afterwards the company passed a resolution respecting these taxes, whereby it declared that "the same are hereby sold, assigned, and transferred to the said J. Callanan and J. J. Smart, for the sum of $21,067, in manner and proportion as follows: To the said J. Callanan $17,567, and to the said J. J. Smart the sum of $3,500 thereof, to be paid, as collected, to them severally, in the sums proportionate to said amounts respectively." This action was brought to recover what plaintiff alleges defendant has collected and retains in excess of his share. But, under the peculiar facts of this case (see opinion), the court *held* that said resolution, even if it be regarded as assignment (which it is not), can only be regarded as an assignment of the taxes as collateral security for the money advanced, and not as a sale of the taxes, and that, since it appears that plaintiff had settled with and been paid by the company before begining this suit, he had no further interest in the taxes, and hence cannot recover.

*Appeal from Polk Circuit Court.*

THURSDAY, DECEMBER 14.

THIS action was brought to recover for certain money alleged to belong to the plaintiff, and to have been collected by the defendant for the plaintiff's use. The defendant does not deny the collection of the money, but denies that it belongs to the plaintiff, and avers that at the time of its collection it belonged to the Des Moines & Minneapolis R. R. Co., which company was the defendant's debtor, and, that by settlement between him and the company, the money so collected was applied upon the defendant's claim. By cross-petition, filed by the defendant, the railroad company was made a party. It filed an answer to the cross-petition and to the plaintiff's petition, setting up substantially the same facts set up by the defendant. There was a judgment for the plaintiff, and the defendant and the railroad company appeal.

*Whiting S. Clark*, for appellants.

*Barcroft & Gatch*, for appellee.

ADAMS, J.—The money in question was originally due the railroad company as taxes voted in aid of the company, and amounting to about $27,000. The plaintiff claims the same by virtue of a certain alleged assignment by the company. It appears that the plaintiff and defendant each respectively advanced money to or for the company, in reliance upon these taxes. Afterward, and before the taxes were collected, the company recognizing the fact that the plaintiff and defendant advanced money in reliance upon the taxes, passed a resolution respecting them, whereby it declared that "the same are hereby sold, assigned, and transferred to the said J. Callanan and J. J. Smart for the sum of $21,067, in manner and proportion as follows: To the said J. Callanan $17,567, and to the said J. J. Smart, the sum of $3,500 thereof, to be paid as col-

lected to them severally, in the sums proportionate to the said amounts respectively, and any excess over said amounts to be distributed between them in the same manner." The plaintiff complains that the defendant has collected and retains more than his proportion; and this action is brought to recover from him the excess. The court found that there was due the plaintiff for excess of taxes so collected by the defendant, and for interest, the sum of $905.23, and rendered judgment accordingly.

The first question presented is, as to what was the character of the transaction which constituted the alleged transfer.

It is to be observed, in the first place, that no instrument was executed and delivered by the company to Callanan and Smart. If there had been, we should need only to look to the instrument and determine the character of the transaction from the intent of the parties as expressed therein. But what the company did was to pass a resolution. This, without something more, could not operate to transfer the taxes. It was in the outset in the nature of a mere proposition. Whether it could operate to transfer the taxes, even if accepted, whether qualifiedly or unqualifiedly, we need not consider. The counsel upon both sides have argued the case upon the theory that, there being an acceptance of some kind, the transaction, whatever it was, was sufficient in form to transfer the taxes, or carry some right therein, and we shall proceed upon the same theory. We come then to consider what was the intent. Upon this question it is safe to say that the intent must have been, either to transfer the taxes as an absolute sale to Callanan and Smart, or to give them security thereon. The plaintiff claimed that there was an absolute sale. But, in our opinion, the plaintiff's position cannot be sustained. It may be conceded that the language of the resolution is such that it might be held to contemplate a sale. If the evidence showed that the resolution was unqualifiedly accepted, we should be inclined to think that Callanan and Smart bought the taxes, taking them for better

or for worse, and agreeing to pay therefor in money, or claims against the company, or both, the sum of $21,067. But, we fail to find any evidence of such acceptance; but we find positive evidence to the contrary. It is abundantly evident that they never intended to take any risk upon the taxes, and never made any trade, whereby they risked anything, or parted with anything. Upon this point we may take the testimony of the plaintiff himself. He was asked how much he was to allow the company for the assignment, and his answer was: "Nothing, only what I got for it. I advanced money, and we was to take what we could get on them taxes, and whatever we could get we were to apply on the debt." We will say farther, that plaintiff's counsel do not in their argument make any claim or pretense that the plaintiff was to give anything, or did give anything. What is more, neither the company nor plaintiff treated the transaction as a purchase, but both treated it as not a purchase. The company charged plaintiff with the actual collections made by him, and he credited the company with the same, and upon this basis he and the company made a final settlement. If the plaintiff and defendant bought the taxes and became the absolute owners thereof, it would have been no concern of the company how much or how little they collected. It is true, the mere charge to the plaintiff, by the company, of his collections, would not show that the transaction was not a sale, for if the transaction, when completed, was a sale, there was nothing which the company could do which could change its character, nor could it make evidence for itself. But the significant fact is, that the plaintiff recognized these charges and settled accordingly.

The theory of the plaintiff's counsel is, if we understand it, that neither he nor the defendant gave, or agreed to give, anything; that the taxes were to be collected and distributed between them in the proportion designated; that if only $21,067, or some less sum, was collected, the collection was to be applied on the indebtedness due the plaintiff and defendant re-

spectively, and that any amount in excess of 21,067, if there should be any, should go to the plaintiff and defendant as a gratuity.

To this position we think that several valid objections may be made. In the first place, if such were the transaction, it would not be a sale. It would be a transfer for security, to the extent of the indebtedness agreed to be secured, and a gift of the balance. But we find no evidence that such was the transaction, and we are glad to be able to say this. The plaintiff was president and one of the directors of the company. He sustained to it a fiduciary relation; it was his duty to protect the company, and not obtain from it an unconscionable bargain. The transaction which the plaintiff's counsel impute to him, if we understand them, would be one for which no reasonable justification or apology could be offered. As compared with it, the absolute sale of $27,000 of taxes, for a little more than $21,000, would be only slightly objectionable, for, in such case, the plaintiff and defendant would take the risk of the collection, and this fact would preclude us from saying that the transaction could not possibly be an honest one.

Having reached the conclusion that the plaintiff and defendant did not buy the taxes, nor acquire them by a transaction which was designed to secure a certain amount of indebtedness and cover a large contingent gift, it seems to result that they must have taken the taxes as security, and nothing else. We have then to inquire whether, in this view, the plaintiff is entitled to recover.

Having taken the taxes as security jointly with the defendant, it may be conceded that, so long as the plaintiff held the claim intended to be secured, and made no relinquishment of his security, he would be entitled to pursue the defendant, if he collected and retained more than his share. But he does not hold any claim intended to be secured. The evidence shows that in May, 1879, some months after the taxes in question were collected by the defendant, the plaintiff had a

full settlement with the company. It was found that he had received taxes for which he should be charged to the amount of $15,470. This amount was allowed by the plaintiff to the company, and applied on its indebtedness to him, and this amount thus allowed, and the only amount allowed, did not include the taxes in question, collected by the defendant. It was found that there was due the plaintiff as balance of account $14,849.↓1. For this amount the company gave its note to the plaintiff, and he immediately sold and transferred it, and all other claims which he held against the company, to one Alley. Now, the moment he did this, it appears to us that all his interest in the taxes in question was extinguished. Whether Alley acquired any claim thereon as security, we need not inquire. The plaintiff's claim upon the taxes was extinguished, and, as between him and the company, they became the property of the company, divested of all lien or charge; and the company had a right to apply the same in settlement with the defendant, or make whatever disposition of them it saw fit. If the plaintiff intended to claim these taxes, and to look to the defendant for them, he should have allowed the company for them in the settlement, or he should have retained the company's note until he could have collected them, and applied them upon the note. The company then would have had the benefit of them, as it should have. The object of the present action is to obtain these taxes for nothing.

It is not material to inquire how the plaintiff justifies himself in his own conscience, but it is easy, we think, to see how he does. When he sold his claim against the company to Alley, including the note above referred to, it appears that he sold at a great discount, and lost several thousand dollars. He was doubtless relying then, as now, upon these taxes, to partially indemnify himself. But his trouble is that he had no claim upon the taxes, except as security, and a creditor cannot be allowed to enforce a security after he has ceased to hold the claim secured. We think the judgment of the Circuit Court must be

REVERSED.